2015 VT 71












 

Falanga
v. Boylan (2014-159)

 

2015 VT 71

 

[Filed 15-May-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 71
 
 


 


 
 
 No. 2014-159
 
 


 


 
 
 Christopher Falanga
 
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
 
 
  
 
 
 Family Division
 
 
 
 
  
 
 
  
 
 
 
 
 Kerry Boylan
 
 
 November Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Harold
 E. Eaton, Jr., J. 
 
 
 
 
  
 
 


Steven J. Howard, Rutland, for Plaintiff-Appellant.

 

Patrick M. Ankuda
of Parker & Ankuda, P.C., Springfield, for
Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund and Robinson, JJ.,
and Morse, J. (Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   In this parentage action, father appeals
the superior court’s decision denying, based on the absence of changed
circumstances, his motion to modify parental rights and responsibilities with
respect to the parties’ young son following mother’s relocation with the child
to the State of Georgia.  We affirm.

¶ 2.            
For eight or nine months following the birth of their son on January 17,
2012, the parties lived together in an apartment connected to the home of the
child’s maternal grandfather in Springfield, Vermont.  In the fall of
2012, mother asked father to leave the apartment, and
father moved into his parents’ home in Chester, Vermont.

¶ 3.            
Father brought the instant parentage action on November 30, 2012. 
Following a hearing, the family division of the superior court issued a
December 7, 2012 interim order providing that the parties’ son, J.B.-F., would
reside with mother.  Under that order, father had limited parent-child
contact, supervised by father’s parents, totaling about six percent of the
child’s time, because of concerns about father’s mental stability at the time
of the breakup.  On February 25, 2013, the family court issued a temporary
order granting mother sole legal and physical responsibility for J.B.-F. and increasing father’s parent-child contact to two
overnights per week without supervision restrictions.  The parties reached
an agreement on parental rights and responsibilities at a September 2013
hearing, and the following month the family court issued a final order
retaining mother as J.B.-F.’s sole custodian subject to father having
parent-child contact that amounted to approximately twenty-five percent of the
child’s time.

¶ 4.            
On March 25, 2014, mother’s attorney notified father’s attorney by
letter that mother planned to relocate with her boyfriend to Peachtree City,
Georgia on May 3, 2014.  The letter included a proposed visitation
schedule that consisted of four time periods during the year, totaling seven or
eight weeks, during which J.B.-F. could visit Vermont,
supplemented by weekly contact through Skype or Facebook.  In response,
father filed an emergency motion to modify parental rights and responsibilities
in which he asked that custody of the child be transferred to him.

¶ 5.            
A hearing on the motion was held on April 24, 2014.  The hearing
was restricted to the threshold issue of whether there was a real, substantial
and unanticipated change of circumstances sufficient to modify parental rights
and responsibilities based on the best interests of the child.  See 15
V.S.A. § 668(a) (providing, in relevant part, that family court may modify
previous order in best interests of child “upon a showing of real, substantial
and unanticipated change of circumstances”).[1]  Mother and father were the only
witnesses at the hearing.  The day after the hearing, the family court
issued a decision denying father’s motion to modify based on its finding that
father had failed to demonstrate the existence of changed circumstances
sufficient to warrant another hearing on whether J.B.-F.’s best interests
warranted transferring custody to father.  While recognizing that mother’s
move would disrupt father’s ability to see J.B.-F. as
frequently as he had been under the parties’ then-current schedule, the court
concluded that Georgia was sufficiently close to arrange longer visits by air
travel of reasonable duration.  Noting that the then-current schedule
would be unworkable once mother moved to Georgia, the court directed the
parties to negotiate a new schedule and the court clerk to schedule a hearing
on parent-child contact.  That hearing was later canceled when father
filed a notice of appeal of the family court’s decision.

¶ 6.            
Meanwhile, in early May, after the family court issued its decision,
mother moved to Georgia with J.B.-F.  Following a hearing on August 6,
2014, the court issued a new parent-child-contact order based on the parties’
stipulation in anticipation of father’s planned move to Georgia the next month
to be near J.B.-F.  The new schedule called for J.B.-F to stay
with father in Vermont from August 12 to September 1, 2014, at which point
father would fly to Georgia with the child and thereafter have regular specified
parent-child contact in Georgia.

¶ 7.            
In this appeal from the family court’s April 25 order denying his motion
to modify parental rights and responsibilities, father argues that the court’s
decision is not supported by the law in light of the evidence presented in the
case.  In response, mother argues that the case is moot because father
decided to move to Georgia to be near the parties’ child, and that, in any
event, the family court correctly determined that father failed to meet his
burden of showing a real, substantial and unanticipated change of
circumstances.

¶ 8.            
We first address the mootness question.  Mother contends that
father’s move to Georgia for an indefinite period of time resolved the
underlying controversy and thus made this appeal moot.  Mother asserts
that the predicate bases for father’s claim of changed circumstances—the
distance of the move and the cost of travel to see J.B.-F.—no longer exist, and
thus there is no live controversy.  See In re Moriarty, 156 Vt.
160, 163, 588 A.2d 1063, 1064 (1991) (stating general rule that case becomes
moot when issues no longer present live controversy, when parties no longer
have legally cognizable interest in outcome, or when reviewing court can no
longer grant effective relief).

¶ 9.            
We conclude that the appeal is not moot.  At oral argument before
this Court, father stated that he moved to Georgia only temporarily so that he
could be near J.B.-F while the Vermont proceedings on his motion to modify are pending,
and that he intends to return to Vermont and live here with J.B.-F. if he obtains custody as a result of those
proceedings.  According to mother, father indicated at the August 6
hearing that his stay in Georgia was for an indefinite period of time. 
These statements are not necessarily inconsistent.  In any event, apart
from the statements at oral argument, there is nothing in the record before us
regarding father’s intent as to the length of his stay in Georgia.  Under
these circumstances, we cannot assume that the appeal is moot. 

¶ 10.         We
now turn to the merits of father’s appeal from the family court’s decision
concluding that he failed to demonstrate changed circumstances as the result of
mother’s relocation.  The moving party has a heavy burden to demonstrate
changed circumstances.  Sundstrom v. Sundstrom, 2004 VT 106,
¶ 29, 177 Vt. 577, 865 A.2d 358 (mem.).  In Hawkes v.
Spence, we clarified our law on relocation in custody cases, particularly
with respect to determining the threshold question of whether changed
circumstances exist.  2005 VT 57, ¶¶ 16-23, 178 Vt.
161, 878 A.2d 273.  This area of the law is not susceptible to
application of precise formulas, and thus “we must permit trial courts—guided
by the principles set forth in Hawkes—the latitude to exercise their
discretion to reach reasonable decisions.”  Rogers v. Parrish, 2007
VT 35, ¶ 1, 181 Vt. 485, 923 A.2d 607.

¶ 11.         In Hawkes,
we adopted “§ 2.17(1) and comment b of the American Law Institute’s (ALI)
Principles of the Law of Family Dissolution for determining when changed
circumstances exist” in relocation cases.  2005 VT 57,
¶¶ 1, 13.  Section 2.17(1) provides that relocation is a
substantial change of circumstances justifying a reexamination of parental
rights and responsibilities “only when the relocation significantly impairs
either parent’s ability to exercise responsibilities the parent has been
exercising or attempting to exercise under the parenting plan.”  ALI Principles of the Law of Family Dissolution § 2.17(1)
(2002).  Thus, whether a relocation
amounts to changed circumstances sufficient to reexamine a child’s best
interests “must be determined in the context of all the surrounding
circumstances, keeping in mind that the effect on the child is what makes a
change substantial.”  Hawkes, 2005 VT 57,
¶ 10.

¶ 12.         Comment
b in § 2.17(1) acknowledges that the relevant factors in making this
determination are too numerous and varied to identify, but lists three
nonexclusive factors that are particularly relevant in determining whether
changed circumstances exist: “[t]he amount of custodial responsibility each
parent has been exercising and for how long, the distance of the move and its
duration, and the availability of alternative visitation arrangements.”  ALI Principles, supra, § 2.17(1) cmt.
b.  We must determine, then, “whether mother’s
relocation would significantly impair father’s ability to continue exercising
the rights and responsibilities he has been exercising.”  Hawkes, 2005 VT 57, ¶ 16.  To answer this
question, the family court must address all relevant factors, including those
quoted above, to gain insight into “the nature and extent of [each party’s]
relationship” with the child and how the proposed move would affect those
relationships.  Id.

¶ 13.         The
first of the three changed-circumstances factors cited in comment b of the ALI
principles and adopted in Hawkes is the amount of custodial
responsibility that the parties have been exercising and for how long. 
This factor requires the court to consider the nature and extent of the
relationship, and how much the move would affect it.  Id.  The
record is undisputed as to this factor.  Father lived with mother at the
home of the child’s maternal grandfather for the first several months after
J.B.-F.’s birth.  For the next few months after leaving mother’s home at
her request, father had very limited, supervised parent-child contact until the
family court issued a temporary custody order in February 2013.  Both the
temporary order and the final order issued in October 2013 granted mother sole
legal and physical parental rights and responsibilities.  Under both
orders, father had only limited parent-child contact with J.B.-F.—approximately
one-quarter of the child’s time at the home of the child’s paternal
grandparents, where father was living.

¶ 14.         The
facts surrounding the second factor are also undisputed.  Mother relocated
with the parties’ child to Georgia, a distance of approximately 1100 miles from
Vermont, and has no plans to return to Vermont.

¶ 15.         Regarding
the third factor—the availability of alternative visitation arrangements—mother
proposed a visitation schedule in which J.B.-F. would
go to Vermont to live with father for seven-to-eight weeks a year, mostly in
the summer.  The proposal indicated that mother would accompany J.B.-F. on the airplane at her own expense until he could fly alone,
and that she would bear the cost of the child’s ticket for the first year’s
summer and holiday visits to Vermont.  Under the proposal, father would
bear the costs of J.B.-F.’s travel the second year.  This proposal would
have reduced father’s parent-child contact time by about nine percent (from
twenty-five percent to approximately sixteen percent).  Mother
acknowledged that her move would alter father’s parent-child contact, but
opined that having longer, albeit less frequent, periods of parent-child
contact with father would enhance the child’s stability and be better for all
concerned.

¶ 16.         In
concluding that father had failed to meet his burden of demonstrating changed
circumstances sufficient to address whether J.B.-F.’s best interests warranted
transferring custody to father, the court emphasized that: (1) the vast
majority of the child’s time had been spent with mother, who had exercised sole
physical and legal parental rights and responsibilities for most of J.B.-F.’s
life; (2) father had no legal parental rights or responsibilities and had
limited parent-child contact amounting to only one-quarter of the child’s time;
(3) although the distance of the relocation is significant, mother is moving to
a place that is regularly serviced by airline flights of a reasonable duration,
and the parties will remain in the same time zone and thus have similar daily
patterns; (4) given J.B.-F.’s young age, he is not as entrenched in his
community in Vermont as an older child might be; and (5) the court could
create an alternative visitation schedule that would afford father longer,
albeit less frequent, periods of time with J.B.-F. and
that would not substantially reduce his parent-child contact time.

¶ 17.         We
conclude that the family court acted within its wide discretion in finding no
changed circumstances sufficient to consider a transfer of custody in this
case.  By all accounts, father has taken full advantage of his
parent-child contact with J.B.-F.  That time, however, while not
insignificant, is only one-quarter of the child’s time and does not include
legal rights or responsibilities.  Mother is the sole custodian and is
with the child for the vast majority of his time.  Thus, regarding the
first ALI factor, father has been exercising relatively minimal parental
responsibilities under the parenting plan.  Although the second factor
leans in father’s favor, given the distance of the move, the court concluded
that, with respect to the third factor, an alternative visitation schedule that
continued father’s parent-child contact, albeit in a different form, could be
established.  Finally, as the family court pointed out, J.B.-F.’s young
age would make the move less disruptive in terms of connections to the
community.

¶ 18.         Mother’s
proposed alternative visitation schedule, which she testified was open to
negotiation, would have given father seven to eight weeks a year with J.B.-F. in Vermont.  On appeal, father makes much of the
financial infeasibility of this plan, but the record does not demonstrate that
such an alternative schedule could not work due to financial reasons. 
Father testified at trial that he would have to stop paying all of his bills
for at least two weeks to purchase a ticket for J.B.-F. to
come to Vermont.  He conceded on cross-examination, however, that the only
cost he would bear, other than airline tickets for J.B.-F. twice
a year, would be driving to the airport to pick up J.B.-F.  He also
acknowledged that he had not considered how much those costs compared to his
travel costs under his current visitation schedule.  In short, there is
nothing in the record indicating that the parties and the court could not have
worked out a viable alternative visitation schedule.[2]

¶ 19.         Comparing
the consolidated cases in Hawkes is helpful in assessing the family
court’s decision here.  In both cases in Hawkes, the family court
found no changed circumstances as the result of the misperception that our law
did not allow a finding of changed circumstances based solely on a relocation by the custodial parent.  In one case, we
reversed the family court and found changed circumstances as a matter of law
because: (1) for a period of years, the parents spent equal time with the child
and their “arrangement demonstrated their continued desire for each of them to
spend an approximately equal amount of time with their child”; (2) the move was
not temporary and was out-of-state, hundreds of miles away; and (3) the family
court’s revised alternative schedule demonstrated “that mother’s move required
a changed parent-child contact schedule that substantially reduced father’s
time with his daughter.”  Id. ¶¶ 17-18.  We found changed
circumstances because “each of the ALI factors strongly indicate[d] that
mother’s relocation amounted to a substantial change of circumstances at the
time of the modification hearing.”  Id.
¶ 19.  Nonetheless, we reiterated “that custodial parents may
change residency without the family court reexamining the division of parental
rights and responsibilities when the relocation does not significantly impair
substantial rights and responsibilities being exercised by the noncustodial
parent.”  Id.

¶ 20.         This
first case reviewed in Hawkes is distinguishable principally because,
unlike the instant case—in which father has no legal parental rights or
responsibilities and has had limited parent-child contact over the course of
the child’s life—the parents in that case had committed to an approximately
equal sharing of their child’s time.  Thus, unlike that case, here the
family court could fashion an alternate visitation schedule that would not
significantly reduce the total amount of time over the course of a year that
father had been spending with the child.

¶ 21.         Perhaps
even more relevant to our case is the second case reviewed in Hawkes. 
With respect to that case, we declined to find changed circumstances as a
matter of law, even though: (1) the noncustodial father had taken full
advantage of his parent-child contact, which was approximately thirty-five
percent of the children’s time; (2) the distance of the proposed relocation was
from Vermont to California on the Mexican border; and (3) the distance of the
move might make it difficult for the family court to fashion a visitation
schedule that did not substantially reduce the father’s parent-child contact,
particularly considering that the father shared legal parental rights and
responsibilities with the mother.  Id. ¶¶ 21-22.  We
concluded that applying the ALI standard and factors did “not so unequivocally
demonstrate changed circumstances” so as to preclude the family court from
revisiting the issue, particularly because the record indicated “that the
current circumstances could be markedly different from what was expected at the
time of the final modification order.”  Id.
¶ 23.  Here, in contrast, father has less parent-child contact
and no legal parental rights or responsibilities.  If that case did not
demonstrate changed circumstances as a matter of law, certainly the instant
case does not under the circumstances described above.

Affirmed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief
 Justice
 
 


 

 

¶ 22.         MORSE,
J. (Ret.), Specially Assigned, concurring.
  I have long maintained that the two-step formula mandated by the
Court for modification of custody in relocation disputes achieves nothing but
“needlessly complex and artificial” decisions.  Gazo
v. Gazo, 166 Vt. 434, 450, 697 A.2d 342, 351
(1997) (Morse, J., concurring).  Under this approach, courts ostensibly
must first determine whether there has been a “substantial change of
circumstances” as a precondition to determining whether the child’s “best
interests” warrant a modification of parental rights and responsibilities.[3]  The difficulty is that the two inquiries
are inseparable, and the formula in practice results only in confusion and
duplication of effort.  What is required, instead, is “a flexible test in
which the change of circumstances and the welfare of the child are evaluated
together in a single, unified inquiry. . . .  Indeed, .
. . courts deciding such issues routinely adopt this approach, albeit
not explicitly.”  Id. at 451-52, 697 A.2d at 352. 
This case perfectly illustrates the point.

¶ 23.         On
the surface, the trial court’s approach here was unassailable, faithfully
implementing the rubric set forth by the Court in its seminal decision in Hawkes
v. Spence, 2005 VT 57, 178 Vt. 161, 878 A.2d 273.  There, the Court
acknowledged that the line dividing the two inquiries in relocation disputes is
“subtle” and easily “obscure[d],” id. ¶¶ 10, 13, but nevertheless did
nothing to alter the two-step approach apart from adopting its codification by
the American Law Institute.  The latter defines a substantial change of
circumstances as one which “significantly impairs either parent’s ability to
exercise” existing parental responsibilities, and sets forth a set of “relevant
factors” for the court’s consideration, including the amount of time each
parent has with the child, the distance of the move, and the availability of
alternative visitation schedules.  Id. ¶ 13 (quoting ALI Principles
of the Law of Family Dissolution § 2.17 cmt. b
(2002)).

¶ 24.         Unfortunately,
this standard virtually invites well-intended but ultimately indefensible
reasoning of the kind exemplified here.  Based in part on the percentage
of time the child had spent with each parent and the general feasibility of an
alternative visitation schedule, the trial court concluded that mother’s
planned move from Vermont to Georgia—more than 1100 miles away—was not a
substantial change of circumstances.  This, despite the fact that mother
proposed to replace the overnight visits that father enjoyed with the child
several times each week with a few interspersed visits during holidays. 
It really does not require an advanced degree in early childhood development to
recognize the inherent weakness in the court’s conclusion that mother’s move
would not significantly impair father’s existing parental contact.

¶ 25.         And
yet, the record and findings leave no doubt that the court’s decision was
ultimately grounded in its considered judgment concerning the child’s best
interests.  The disconnect between reasoning and
result is easy to explain.  By acknowledging in Hawkes that the
question of “whether a relocation . . . is substantial enough to meet the
threshold must be determined in the context of all the surrounding
circumstances, keeping in mind that the effect on the child is what makes a
change substantial,” 2005 VT 7, ¶ 10 (emphasis added), the Court
effectively enabled sound decisionmaking based on the
child’s best interests—despite the obvious demerits of the two-step
approach.  The trial court’s ruling here proves this point, as well.

¶ 26.         While
bifurcating the proceeding purportedly to consider the child’s best interests
only if it concluded that there was a substantial change of circumstances, the
record evidence—and the trial court’s findings and conclusions—were
nevertheless immersed in best-interests considerations.  Father testified
in detail about his relationship with the child from birth, his extensive
involvement in the child’s daily routine during visits, the child’s
relationship with father’s parents and other family members, and father’s deep
concerns about how mother’s move would affect his relationship with the child.

¶ 27.         Mother
provided equally informative testimony on the child’s relationship with her,
her family, and her new partner, her reasons for the planned move, and her
views on why the move would ultimately be in the child’s best interests. 
She explained that the move was impelled by her decision to live with her new
partner, who resides and works in Georgia, and that they planned to purchase a
home together in a particular community.  She had researched the area, and
concluded that the child would benefit from its schools and cultural
opportunities, and had found a daycare program which she felt was
suitable.  Mother acknowledged the child’s close relationship with father
and her desire to maintain it, and believed that the relationship would remain
strong despite the move.  She was persuaded, however, that the stability
and structure from living for longer periods in an intact nuclear family would
also benefit the child in the long term, and that the move was in the child’s
best interests.

¶ 28.         In
its decision, the trial court relied on essentially three main considerations,
all focused on the move’s potential impact on the child’s relationship with his
parents, and ultimately his best interests.  First, the court considered
the parties’ existing relationships, noting that mother had been the child’s
primary care-provider since his birth.  While acknowledging father’s
hands-on care for the child during the visitation periods, the court found that
“[i]t has been mother who has exercised the major
decision-making responsibilities for [the child] . . . and in meeting the
majority of his daily physical needs.”  Second, while acknowledging the
move’s inevitable impact on father’s relationship with the child, the court
found that it would be mitigated, at least in the short term, by the child’s
young age, which meant that longer, albeit less frequent visits with father
would not impact his schooling or disrupt entrenched friendships.  Finally,
the court recognized the advantage to the child of remaining with his primary
parent, in a new stable family and vibrant community and all the additional
opportunities which this offered.  These considerations, the court
concluded, militated against the very significant emotional “upheaval” to the
child that would be occasioned by a change of custody, and thus compelled
denial of father’s motion to modify parental rights and responsibilities. 


¶ 29.         While
not explicitly framed as such, the trial court’s ruling was thus fundamentally
grounded in a considered weighing of the factors customarily affecting the best
interests of a child, including each parent’s relationship with the child and
ability to attend to his needs, the quality of the child’s adjustment to his
current community and extended family in Vermont as well as the family and
community that he would enjoy in Georgia, the adverse emotional impact of
changing the child’s primary care-provider, and mother’s expressed willingness
to continue to foster a relationship with father in the event of a move. 
See 15 V.S.A. § 665(b) (listing statutory factors for court to consider in
determining child’s best interests); see also Knutsen
v. Cegalis, 2009 VT 110, ¶ 12, 187 Vt. 99,
989 A.2d 1010 (recognizing that “a custody change is a significant and
confusing change for a child”): Lane v. Schenck,
158 Vt. 489, 498, 614 A.2d 786, 791 (1992) (observing that appraisal of
custodial parent’s move should consider that allowing “the new family to
flourish is itself conducive to the best interests of the children involved”
and “the family’s benefit” in the future).  I can find no basis to
conclude that the court’s decision in this regard was unsupported by the
evidence, or an abuse of its broad discretion in such matters.  See Hazlett
v. Toomin, 2011 VT 73, ¶ 11, 190 Vt. 563, 27 A.3d 328 (mem.) (noting that we
afford the trial court “broad latitude in determining the child’s best
interests”).  Accordingly, I would affirm the judgment on this basis.[4]  

¶ 30.         I
close this discussion where I began.  Co-parenting arrangements are
complicated enough without the additional strain of a custodial parent’s decision
to relocate, and the resulting dispute is like no other confronting the family
court.  On the one hand, the abundant benefits that flow from the love and
security provided by two supportive and involved parents, even if
separated or divorced, is well-recognized.  On the other hand, the need
for stability and continuity may ultimately weigh in favor of maintaining the
child’s existing custodial placement, notwithstanding the fact that most relocations will inevitably impair the child’s relationship with
the non-moving parent.  Decisions this wrenching require a flexible
process, allowing the trial court to hear and weigh all of the evidence in one
comprehensive and unfettered proceeding.  Mechanical formulas and
artificial thresholds do nothing but cause delay, distort the process, and
hamper the court’s analysis, to the detriment of the only interests that
matter—those of the parents and the child.


 
 
  
 
 
  
 
 
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice (Ret.),
 Specially Assigned
 
 


 

 

¶ 31.        
ROBINSON, J., dissenting.   The
question in this case is not whether maintaining mother’s parental
rights and responsibilities after her move to Georgia is in the child’s best
interests.  If he had been given the opportunity to present his case
concerning the child’s best interests, father would have faced an uphill
battle.  We have recognized that at the best-interests stage of the
modification analysis, “[w]hen a noncustodial parent
seeks a change in custody based solely on the custodial parent’s
decision to relocate, the moving party faces a high hurdle in justifying the
‘violent dislocation’ of a change in custody from one parent to the
other.”  Hawkes v. Spence, 2005 VT 57, ¶ 11, 178 Vt. 161, 878
A.2d 273 (quoting Hoover (Letourneau) v. Hoover, 171 Vt. 256, 259, 764
A.2d 1192, 1194 (2000)); see also id. ¶ 1 (“[W]hen one parent has
parental rights and responsibilities for a significant majority of the time,
the other parent challenging relocation bears a heavy burden of demonstrating
that the severe measure of transferring primary rights and responsibilities
from one parent to another is necessary to serve the children’s best
interests.”).  We have not invoked this admonition, however, as a reason
to reject a motion to modify in a relocation case at the threshold stage—the
consideration of whether a real, substantial, and unanticipated change of
circumstances exists.  Instead, it is a consideration that weighs heavily
in the best-interests analysis.

¶ 32.        
The question in this case is whether, given the evidence before it and
its own findings, the trial court could have concluded in this case that the
change wrought by mother’s relocation of the two-year-old child over a thousand
miles away from his prior home, and from his father, was substantial enough to
warrant consideration of whether the child’s best interests would be
served by reallocating parental rights and responsibilities.

¶ 33.         The
trial court rightly recognized that our decision in Hawkes v. Spence
establishes the framework for analyzing these relocation cases.  In
assessing whether father had shown a real, substantial, and unanticipated
change of circumstances,[5]
the court rightly considered, among other factors, the pre-relocation
allocation of the child’s time between the parents, the existing exercise of
legal and physical parental rights and responsibilities, the distance of the
move and its impact on the child’s time with his father, and the availability
of an alternative visitation schedule.  These factors all inform
consideration of the question we identified in Hawkes as critical:
whether “the relocation significantly impairs either parent’s ability to
exercise responsibilities the parent has been exercising or attempting to
exercise under the parenting plan.”  Id. ¶ 16 (quoting ALI
Principles of the Law of Family Dissolution § 2.17(1) (2002)).  As we
explained in Hawkes, “to determine whether a
move would significantly interfere with the
relationship between the child and the nonmoving parent, the court must
consider the nature and extent of that relationship, and how the move would
affect it.”  Id.  We gave, as an example of a relocation that
would not necessarily interfere significantly with the relationship between the
child and the nonmoving parent, a scenario in which “the noncustodial parent
had minimal parent-child contact—like every other weekend” and so “arranging
acceptable alternative visitation would be more feasible, depending perhaps
on the distance of the move.”  Id.[6] (emphasis added).  Thus, even in cases in which the
nonmoving, noncustodial parent has minimal parent-child contact, we recognized
that the distance of the move may impact the feasibility of acceptable
alternative visitation.

¶ 34.         In
evaluating the extent to which mother’s move would impair father’s ability to
exercise responsibilities that he had been exercising, the trial court in this
case considered both the extent of father’s existing engagement with the child,
and the likely impacts of a move.  With respect to father’s existing role,
the trial court found that mother had the majority of time with the
child.  The court also found that mother exercised most of the parental
rights and responsibilities for the child.  With respect to the impact of
the move on father’s ability to maintain his parental role, the court said:

Importantly,
Georgia is sufficiently close to Vermont that airline flights are readily
available and of reasonable duration.  The Court concludes that an
alternative visitation schedule can be created which affords father longer
periods of time with his child, albeit less frequently.

 

¶ 35.         The
evidence concerning alternative visitation schedules consisted primarily of
mother’s proposed new contact schedule.  The existing schedule provided
for the child to spend about twenty-five percent of his time with father in
frequent visits ranging from a few hours to three days and nights. 
Mother’s proposed schedule provided for the child to spend a total of about
eight weeks (about fifteen percent of his time) with father, in four long
chunks of time, clustered primarily in the summer.[7]  To facilitate this contact, mother
proposed that she would fly to and from Vermont with the child until he was old
enough to fly by himself.  The trial court noted mother’s proposal as
evidence of her recognition of the need for continuing contact between the
child and father, and as evidence of the availability of alternative visiting
arrangements, but specifically noted that it was not ruling on the adequacy of
mother’s proposal.

¶ 36.         Mother
proposed that she pay for the cost of the first summer trip and the rotating
Thanksgiving/Christmas visit, and that father pay for the second summer trip
and the springtime trip.  Father testified that he cannot afford the cost
of airfare for the child and that he would have to stop paying all his bills
for at least two weeks to buy a ticket for the child to fly from Georgia to
Vermont and back.  He further testified that just two months prior to the
modification hearing, the magistrate issued a child-support order reflecting a
downward deviation on account of father’s limited finances.  In that unappealed final order, the magistrate found that “[b]oth parents are barely meeting their monthly expenses with
their incomes.”  There was no contrary evidence suggesting that the
parties could reasonably afford the cost of four round-trip tickets from
Georgia to the Vermont region each year, in addition to the cost of mother’s
companion ticket until the child is old enough to travel alone.[8]

¶ 37.        
In the face of this record, the trial court’s conclusion that alternative
visitation can be arranged using air travel between Georgia and Vermont is not
supported by credible evidence.  Bell v. Squires, 2003 VT 109,
¶ 14, 176 Vt. 557, 845 A.2d 1019 (“We will uphold
factual findings if supported by credible evidence, and the court’s conclusions
will stand if the factual findings support them.” (quotation
omitted)).

¶ 38.        
The trial court’s more significant error involves its application of Hawkes. 
In Hawkes, the child spent approximately a third of her time with her
father, having spent half her time with him during an earlier period of her
life.  The father had made full use of his contact time, and had been a
very loving, devoted, and active participant in the child’s life.  2005 VT 57, ¶ 17.  The mother planned to move to Maryland, hundreds of
miles from Vermont, and there was no indication that the move would be
temporary.  Id. ¶ 18.  The trial
court had fashioned a revised parent-child contact order that reduced the
child’s time with her father by approximately one-third.  Id. 
We concluded that although the trial court’s revision of the parent-child
contact schedule was “not itself a factor in determining whether changed
circumstances exist[ed],” the fact that the “mother’s
move required a changed parent-child contact schedule that substantially
reduced [the] father’s time with his daughter,” did “demonstrate that [the move
had] the potential to significantly interfere with [the father-daughter]
relationship.”  Id.  On the basis of these factors, this Court
reversed the trial court’s decision that the relocation did not constitute a
substantial change of circumstances, held that the relocation amounted to a
substantial change of circumstances as a matter of law, and directed the
trial court to proceed to the best-interests analysis.  Id.
¶¶ 3, 19, 23.  We recognized that the decision potentially
reduced the obstacle posed by the threshold requirement of a substantial change
of circumstances:

[W]e do not intend to imply that
the threshold requirement of changed circumstances contained in [15 V.S.A.]
§ 668 is superfluous after today’s decisions.  To the contrary, we
reiterate that custodial parents may change residency without the family court
reexamining the division of parental rights and responsibilities when the
relocation does not significantly impair substantial rights and
responsibilities being exercised by the noncustodial parent.

 

Id. ¶ 19 (emphasis added).

 

¶ 39.        
This case involves a father who, like the father in Hawkes, was
engaged in the child’s life, tended to the child’s needs, and had frequent and
ongoing contact with the child.  Father never missed a visitation. 
Although the percentages of time the respective fathers spent with their
children prior to relocation are not identical (approximately twenty-five
percent in this case, and twenty-nine percent in Hawkes, see 2005
VT 57, ¶ 2 n.4), they are comparable.  The
distances between Vermont and the custodial mothers’ new locations were
comparable.  And the likely diminution in father’s time with his child in
this case is comparable to that noted in Hawkes.  (Mother’s
proposal in this case would reduce the child’s time with father by forty
percent.)

¶ 40.        
I recognize that the majority relies more heavily on Lacaillade
v. Hardaker, a case consolidated with Hawkes
on appeal.  With respect to Lacaillade,
we wrote:

 
[I]t is undisputed that from the February 2001 final divorce order until
commencement of the modification proceedings, father enjoyed parent-child
contact for approximately thirty-five percent of the children’s time—five of
every fourteen days.  The family court found that both parents are devoted
to their children and take full advantage of their time with the children . . . .  In short, mother is the children’s
primary physical custodian, and father has substantial parent-child contact.
Further, pursuant to the final divorce order, the parties share legal parental
rights and responsibilities.

 

 
Regarding the other ALI factors, the distance of the proposed relocation in
this case is very substantial, essentially from the northeast to the southwest
corner of this country. . . .  As for the availability of
alternative visitation arrangements, the distance of the move may make it
difficult for the family court to fashion a visitation schedule that does not
reduce, or alter the nature of, father’s substantial parent-child contact,
particularly considering that father shares legal parental rights and
responsibilities with mother.

 

 
Plainly, the facts of this case could support a finding of changed
circumstances under the ALI standard, assuming that the relocation occurred
as planned.  Nevertheless, applying that standard and the relevant
criteria does not so unequivocally demonstrate changed circumstances that we
will preclude the family court from revisiting the issue.  This is
particularly true in this case because the record suggests that the current
circumstances could be markedly different from what was expected at the time of
the final modification order.

 

Hawkes,
2005 VT 57, ¶¶ 21-23 (emphases
added).  Viewing this Court’s analysis of the Lacaillade
case next to that of the Hawkes case, it is clear that in Hawkes,
the Court was particularly moved by evidence that at an earlier period in the
child’s life, the child essentially split her time between father and mother,
and in Lacaillade, the Court was especially
influenced by something in the record suggesting that current circumstances had
changed since the final modification order.  The Court did not specify
what about the current circumstances led it to leave open the possibility of
finding no substantial change in circumstances, but did make it clear that the
possibility that things were different from the record that was before the
trial court on the modification motion was a significant factor in its
willingness to leave the door open to a “no changed circumstances”
finding.  No such factor is present here.

¶ 41.         Considering our analysis in the two Hawkes cases, the
record in this case, and the trial court’s findings, I cannot affirm the trial
court’s conclusion that mother’s move with the child would not significantly
interfere with the child’s relationship with his father.  Although the
child unquestionably spent the majority of his time with mother, father’s role
in the child’s life was significant.  The trial court outlined father’s
schedule of frequent contact with the child, and noted that there were no
reported incidents where father did not keep his visitation.  As the
majority notes, the child spent approximately twenty-five percent of his time
with father before the relocation.  Ante,
¶ 3.  The court recognized that father was engaged with the
child and tended to his needs while the child was in his care.  This is
not a situation, like that envisioned in Hawkes, in which alternative
visitation arrangements might enable a parent who sees his or her child every
other weekend to arrange alternative visitation—“depending . . . on
the distance of the move.”  2005 VT 57, ¶ 16. 
Although the trial court concluded that alternative visitation was available
here, there is no question that the child’s move to Georgia, over one thousand
miles away, would require a substantial restructuring of his relationship with
his father, as well as a likely significant diminution in the child’s time with
his father.  I cannot conclude that the evidence supports a conclusion
that mother’s relocation will not “significantly impair[]
[father’s] ability to exercise responsibilities [he] has been exercising,” the touchstone of the “substantial change in circumstances”
requirement.  Id. ¶ 13.

¶ 42.         In
his concurrence, Justice Morse argues that the trial court’s decision is
affirmable under the best-interests prong of the modification analysis. 
As he accurately observes, the trial court’s decision is firmly grounded on
factors generally associated with the best-interests analysis.  Given the
trial court’s findings, if the parties had had a full and fair opportunity to
present their evidence concerning the child’s best interests, I would readily
join the concurrence in affirming the trial court’s judgment on the basis of
the trial court’s findings.  However, I part ways with the assessment
reflected in the concurrence that there is nothing in the record to suggest
that, as a result of bifurcation, the trial court was deprived of relevant
evidence.  Ante, ¶ 29 n.4.

¶ 43.         The
hearing below was noticed for April 24, 2014.  Mother planned to relocate
about a week from that date.  At the beginning of the hearing, mother’s
counsel asked whether the court planned to hear evidence concerning both
“substantial change” and “best interests,” or whether the court would hear only
evidence concerning the threshold issue.  The trial court expressed its
desire to hear the entire case, but said that if the two hours scheduled was
not sufficient to do that, then it would bifurcate.  Both mother’s
attorney and father’s attorney acknowledged that presenting a full
best-interests case would require more time than the two hours allotted that
day.  Recognizing that the court was not likely to be able to hear
evidence on the child’s best interests before the anticipated May 3 relocation,
the trial court opted to proceed solely on the substantial-change question,
explaining that if the court ruled in father’s favor on that issue, it would
promptly schedule another hearing on best interests.

¶ 44.         I
cannot on this record conclude that father got a fair hearing on the
best-interests question.  Although much of the evidence father presented
was germane to the best-interests analysis, we simply cannot and do not know
what evidence father did not present on that subject as a result of the
limited time and the court’s understandable decision to bifurcate.

¶ 45.         I do
agree with the concurrence that this case highlights the perils of bifurcating
issues that are functionally intertwined.  In the post-divorce context,
separate consideration of the question of whether a party filing a
post-judgment motion to modify can show a real, substantial, and unanticipated
change of circumstances may save the parties and the court precious
resources.  But in serious relocation cases, the impact of a parent’s move
would have a substantial impact on a child and the child’s best interests are
so interconnected that it is hard to see the benefit of bifurcation.  In
most such cases, the more direct course is, as the concurrence suggests, to consider the change of circumstances and the welfare of
the child together in a single, unified inquiry.  Ante,
¶¶ 22, 30.  Ultimately, the question of whether a particular
case is appropriate for bifurcation falls within the trial court’s
discretion.  See V.R.F.P. 4(j)(4) (“If a hearing
is to be held on a motion . . . to modify a judgment, the court may
bifurcate the hearing and first determine and make findings as to whether there
has been a real, substantial, and unanticipated change of circumstances; if no
such change is found, the court may dismiss the motion without reaching the
merits of the action.”).

¶ 46.         In
this case, for reasons relating to limited available court time and the urgency
of a resolution, the trial court clearly did opt to bifurcate.  Having
declared that the only issue before it was the threshold substantial-change question,
I believe the trial court erred in evaluating that issue.  I would remand
this case for a consideration of the child’s best interests, recognizing that
father bears a heavy burden on that issue.  For these reasons, I dissent.

¶ 47.         I am
authorized to state that Justice Dooley joins this dissent.


 
 
  
 
 
  
 
 
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 


 

 














[1] 
Hereinafter, we will use the short form “changed circumstances” to express the
term “real, substantial and unanticipated change of circumstances.”





[2] 
Even though father filed the motion to modify parental rights and responsibilities
based on changed circumstances, apparently the dissent would place upon mother
the burden of proving that father could not afford two airline tickets per year
for their son’s travel.  That is not our law.  See Sundstrom, 2004 VT 106, ¶ 29 (“The moving party
bears a heavy burden to prove changed circumstances, and the court must
consider the evidence carefully before making the threshold finding that a
real, substantial and unanticipated change of circumstances exists.” (quotation omitted)).  





[3] 
The two-step approach purportedly derives from the modification statute, which
provides, in relevant part, that “upon a showing of real, substantial and
unanticipated change of circumstances, the court may annul, vary, or modify an
order . . . if it is in the best interests of the child.”  15 V.S.A. § 668(a).  This language does not, however,
“unambiguously mandate a two-stage judicial inquiry.”  Gazo,
166 Vt. at 450, 697 A.2d at 351 (Morse, J., concurring).  On the contrary,
the text appears to support a more integrated analysis, “assessing the
substantiality of the change in light of its effect on the welfare of the
child.”  Id.





[4] 
There is nothing here to suggest that, as a result of the bifurcation, the
trial court was deprived of relevant evidence.  The court limited the
evidence at the hearing in only one instance, when father was asked whether he
had considered an alternative visitation schedule in the event that his motion
for change of custody was denied.  Father’s attorney informed the court
that a visitation proposal had been prepared, but the court indicated that its
“inclination would be to not go into that at this juncture.”  There is no
basis to conclude that exclusion of the proposal, which the court later
considered, affected the court’s analysis.  Father’s attorney also stated
that he was presenting the case “specific” to the change-of-circumstances
issue, but again the record evidence summarized above provided a full picture
of the child’s interests relative to the move, and there is nothing to suggest
that a remand at this juncture for additional evidence is required.  On
the contrary, ordering the parties to return to square-one to reconsider the
move in another lengthy proceeding, more than a year after the court’s
decision, would only be disruptive to the child’s stability.  While I
acknowledge Justice Robinson’s observation that we cannot “know” with perfect
certainty that all possible best-interests evidence was adduced, post,
¶¶ 43-44, the record evidence was ample, and a remand for the sake of
perfection is not, in my view, necessary to protect either the child’s or
father’s interests.  Much time has passed, and in the event that
circumstances relative to the child’s interest have significantly changed,
father remains free to file a new motion for modification.





[5] 
Mother’s relocation in this case was undisputedly unanticipated.

 





[6] 
The majority here seems to raise the bar considerably as to what constitutes
“minimal” parent-child contact, suggesting that father’s contact in this
case—amounting to twenty-five percent of the time—falls into the same category
as a father with every-other-weekend visitation (fifteen percent of the
time).  Ante, ¶ 20.

 





[7]  The only other component of the
proposed alternative visitation schedule was one-hour videoconference sessions
(via Skype or Face Time) between father and his then-two-year-old child each
week.





[8]
 The majority dismisses this undisputed evidence and asserts that father
“conceded on cross-examination . . . that
the only cost he would bear, other than airline tickets for J.B.-F. twice a year, would be driving to the airport to pick up
J.B.-F.”  Ante, ¶ 18.  But this
concession does not suggest that father could bear that cost.  I do not,
as the majority suggests, shift the burden of proof concerning the financial
viability of mother’s proposed parent-child contact plan to mother.  Here,
father has testified that he cannot afford the plane tickets to maintain
contact with the child.  His testimony is bolstered by an unappealed final order by the magistrate finding that both
parents are barely meeting their monthly expenses.  Mother introduced no
evidence countering the magistrate’s prior finding or father’s testimony. 
In these circumstances, father has met his burden on this point, and I do not
see an evidentiary basis for the trial court’s finding that alternative
visitation can be arranged by air travel.